**JAVERBAUM WURGAFT HICKS**
**KAHN WIKSTROM & SININS, P.C.**
1000 Haddonfield-Berlin Road, Suite 203
Voorhees, NJ 08043
Phone: 856.596.4100
Fax: 856.702.6640
Michael A. Galpern, Esquire
Attorney ID No.: 029031988
Zachary M. Green, Esquire
Attorney ID No.: 181512016

**KLAFTER OLSEN & LESSER LLC**
Two International Drive, Suite 350
Rye Brook, N.Y. 10573
Phone: 914.934.9200
Seth R. Lesser, Esquire
Attorney ID No.: 051051988
Morgan M. Stacey, Esquire (*pro hac* to be filed)

**Attorneys for Plaintiff**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

---

| | |
|---|---|
| KEVIN CLEMENTS; | COMPLAINT AND DEMAND FOR JURY TRIAL |
| Plaintiff(s), | |
| v. | |
| JUUL LABS INC.; ALTRIA GROUP, INC.; and PHILIP MORRIS USA, INC., JOHN DOES #1-50; ABC CORPORATION #1-50, | |
| Defendant(s). | |

---

Plaintiff Kevin Clements ("Plaintiff"), by and through his attorneys Javerbaum Wurgaft

Hick Kahn Wikstrom & Sinins, P.C., alleges as follows:

## **INTRODUCTION**

1

1. This is a products liability action alleging personal injuries arising out of Defendants' design, manufacture, assembly, promotion, marketing, sale, delivery, distribution and/or supply of JUUL e-cigarettes and JUUL pods.

2. Plaintiff purchased, used, became addicted to, and/or been otherwise harmed by the Electronic Nicotine Delivery Systems (hereinafter, "ENDS")[1], including but not limited to, electronic cigarettes, e-cigarettes, vaporizers, pods, e-liquids, and their component parts, manufactured, designed, assembled, promoted, delivered, marketed, sold, and/or supplied by Defendants.

3. As outlined in greater detail herein, Defendants designed, manufactured, assembled, installed, delivered, marketed, sold, supplied, and or otherwise took action with respect to the above referenced products, specifically targeting Plaintiff through misleading, deceptive, and unconscionable practices.

4. Defendants' unlawful practices have led to Plaintiff becoming addicted to e-cigarettes and vaping, to his severe detriment.

5. Defendants' marketing of JUUL products was done fraudulently with the intent to mislead individuals – such as Plaintiff – into purchasing JUUL e-cigarettes, pods, and related ENDS.

6. When Defendants launched their products, they failed to warn of any adverse effects that they knew, or should have known, would likely occur, including but not limited to addiction, increased risk of heart disease and stroke, increased risk of pulmonary disease,

---

[1] As used in this Complaint, "ENDS" refers to and includes all nonlighted, noncombustible devices that employ a mechanical heating element, battery, or circuit, regardless of shape or size, to produce aerosolized or vaporized nicotine for inhalation into the body of a person, including but not limited to a device that is manufactured, distributed, marketed, or sold as an e-cigarette, e-cigar, e-pipe, e-hookah, vape pen, or any other similar product with any other product name or descriptor, including component parts.

changes in brain functionality leading to anxiety, depression, and other long term mental health conditions, decreased functionality of the endocrine system, heightened risk of cancer, and negative effects on fertility.

7. Defendants fraudulently marketed their products as safe and/or safer than conventional cigarettes.

8. Defendants also fraudulently marketed their products as nicotine cessation devices.

9. The Centers for Disease Control and Prevention (hereinafter, "CDC") and the Food and Drug Administration (hereinafter, "FDA"), along with numerous recognized medical experts, have indicated that users of electronic cigarettes and vaporizers should cease using such products until sufficient research on the long-term effects of such products can be completed.

10. Additionally, the CDC, FDA, and numerous recognized medical experts have advised adult smokers who are attempting to quit to refrain from using ENDS and instead use evidence-based treatments, including counseling and FDA-approved medications.

11. JUUL products have not been approved by the FDA as a smoking cessation therapy or in any other capacity.

12. Through this action Plaintiff seeks, inter alia, reasonable and adequate compensation for pain and suffering, financial harm, emotional distress, medical expenses, and disfigurement, as well as in the form of continued medical monitoring over time, at Defendant's expense.

## VENUE

13. Venue is proper in the District Court of New Jersey pursuant to 28 U.S.C. § 1332(d) as the amount in controversy exceeds $75,000.00 and there is diversity of citizenship of the parties.

14. This Court has personal jurisdiction over all Defendants as Defendants do business in New Jersey and have sufficient minimum contacts in New Jersey. Defendants intentionally avail themselves of the markets in this State through the promotion, marketing, sale, and distribution of the products at issue in this lawsuit.

15. A substantial part of the events and/or omissions giving rise to the claims at issue in this Complaint arose in New Jersey.

## THE PARTIES

16. Plaintiff Kevin Clements is an individual residing in Haddonfield, New Jersey.

17. Plaintiff purchased ENDS manufactured, designed, assembled, installed, delivered, marketed, sold, and/or supplied by Defendants based on false, misleading, deceptive, unconscionable, and/or inadequate practices, resulting in his severe detriment.

18. In approximately 2017, Plaintiff began to see advertisements for JUUL electronic cigarettes.

19. As a result of the advertisements, Plaintiff believed that JUUL e-cigarettes were a safe alternative to smoking traditional cigarettes.

20. Additionally, as a result of these advertisements, Plaintiff was unaware that JUUL products contained substantial amounts of nicotine or that such products were addictive.

21. As a result of Defendants' advertising and marketing, Plaintiff began using JUUL e-cigarettes in approximately 2017.

4

22. Defendants' advertising and marketing, along with the availability of flavored pods led Plaintiff to purchase their products.

23. Plaintiff was attracted to, and most frequently purchased, JUUL's mint flavored pod.

24. Plaintiff did not smoke cigarettes prior to using JUUL.

25. Plaintiff would not have started using JUUL had he known they were addictive and had he known of the health risks of using such products.

26. Plaintiff is able to smoke JUUL e-cigarettes frequently due to the design of the JUUL e-cigarette.

27. Prior to switching to JUUL e-cigarettes, Plaintiff did not experience any respiratory symptoms.

28. Since switching to JUUL e-cigarettes, Plaintiff experiences increased phlegm and throat irritation.

29. Plaintiff has been unable to wean himself off of JUUL e-cigarettes.

30. As a result of his use of JUUL e-cigarettes, Plaintiff has suffered, and continues to suffer, severe adverse health effects, including but not limited to addition, throat irritation, increased phlegm, financial harm, emotional distress, and medical expenses.

**Defendants**

31. Defendant JUUL Labs, Inc. is a Delaware corporation with its principal place of business located at 560 20th Street, San Francisco, CA 94107. JUUL originally operated under the name of PAX Labs, Inc. In 2017, it was renamed JUUL Labs, Inc. JUUL manufactures, designs, assembles, installs, delivers, markets, sells, promotes, and/or supplies ENDS, including but not limited to, e-cigarettes, vaporizers, e-liquids, and associated component parts.

32. Defendant Altria Group, Inc. ("Altria") is a Virginia Corporation with its principal place of business located at 6601 West Broad Street, Richmond, Virginia 23230.

33. Defendant Philip Morris USA, Inc. ("Philip Morris") is a wholly owned subsidiary of Altria. Philip Morris is a Virginia corporation with its principal place of business located at 615 Maury Street, Richmond, Virginia, 23224. Philip Morris is engaged in the manufacture and sale of conventional cigarettes in the United States. Philip Morris is the largest conventional cigarette company in the United States.

34. Altria and Philip Morris have a thirty-five (35) percent ownership in JUUL.

35. John Does #1-50 are individuals, agents, or representatives, whose acts caused or contributed to cause Plaintiff's damages, and whose names are unknown to the Plaintiff at this time, despite Plaintiff's best efforts to ascertain their identity, but which will be substituted by amendment when ascertained.

36. ABC Corporations #1-50 are, whether singular or plural, individuals, firms, partnerships, corporations or other entities, that designed, manufactured, distributed, marketed, advertised, or sold JUUL products, component parts, or products compatible with JUUL products, and whose acts caused or contributed to cause Plaintiff's damages, whose names are unknown to Plaintiff at this time, despite Plaintiff's best efforts to ascertain same, but which will be substituted by amendment when ascertained.

## FACTUAL BASIS FOR THE RELIEF REQUESTED

37. Plaintiff incorporates all prior allegations of the Complaint.

38. Defendants JUUL, Altria, and Philip Morris will be referred to hereinafter collectively as "JUUL" or "Defendants."

39. JUUL manufactures, designs, assembles, installs, delivers, markets, sells, promotes, and/or supplies ENDS, including but not limited to, e-cigarettes, vaporizers, e-liquids, and associated component parts and engages in the manufacture, design, assembly, delivery, marketing, advertising, sale, promotion, distribution, and/or supply of ENDS in the state of New Jersey and elsewhere.

40. Defendant JUUL began manufacturing, designing, assembling, delivering, advertising, promoting, marketing, selling, and/or supplying e-cigarettes and associated ENDS in approximately 2015.

41. A 2016 NJ Youth Tobacco Survey found that, as of 2016, "vaping" surpassed the prevalence of conventional cigarette usage.

42. The New Jersey Department of Education has alerted the public that it is a misconception that "vaping" is safe and that e-cigarettes are not safe for use, contain nicotine, and are harmful to brain development.

43. Defendant's ENDS, including e-cigarettes, pods, e-liquids, and component parts, deliver dangerous toxins and carcinogens to users, including Plaintiff. Nicotine itself is a known toxic chemical associated with cardiovascular, respiratory, reproductive, and immunosuppressive problems.

44. Nicotine adversely affects multiple bodily systems and is highly addictive.

45. Numerous medical experts, including the CDC, have advised that additional research is necessary to determine the adverse effects of the multiple toxins present in e-liquids, but evidence suggests that short term usage can adversely affect pulmonary function because it introduces foreign substances into the lungs.

46. The addictive qualities of ENDS, including, specifically JUUL's products well exceed those of other nicotine delivery devices, including, specifically cigarettes. While Defendant is aware of this, the consuming public, including Plaintiff herein, is not and was not.

47. Since 2015, JUUL has become the dominant e-cigarette manufacturer in the United States.

48. A recent study from Stanford University School of Medicine notes that in November 2018, JUUL had 76.1 percent of the United States e-cigarette market.[2]

49. JUUL e-cigarettes look like a USB flash drive, can charge in a computer, and are small enough to be hidden in a closed hand. JUUL e-cigarettes are used by heating up a small cartridge containing oils, called "JUUL pods", "pods", or e-liquids, to create vapor, which quickly dissolves in the air. Other "pod" or "e-liquid" manufacturers design, manufacture, sell, and promote pods in numerous flavors that are able to be used with JUUL e-cigarettes.

50. JUUL pods include, but are not limited to, the ingredients of nicotine, benzoic acid, glycerine, and propylene glycol.

51. JUUL has in the past and continues to design, assemble, deliver, market, sell, promote, and/or supply multiple flavors of "pods," including but not limited to mango, fruit, cucumber, crème, and mint.

52. Despite being marketed as a safe alternative to conventional cigarettes, JUUL pods deliver a higher concentration of nicotine per pod than a pack of cigarettes and utilize a

---

[2] Jackler, Robert K., et al. "JUUL Advertising Over Its First Three Years on the Market." Stanford Research into the Impact of Tobacco Advertising. January 2019.

device that is easier to conceal than a conventional cigarette, making it more addictive and attractive to individuals than conventional cigarettes.[3]

53. The adverse effects of nicotine on brain development and bodily systems are well-studied. Nicotine adversely affects the heart, eyes, reproductive system, lungs, and kidneys.

54. JUUL pods were designed to decrease the perceived harshness of nicotine ingestion, thus creating a greater likelihood of abuse from users. [4]

55. This design shows Defendants intention to recruit individuals to use its e-cigarettes more frequently than conventional cigarettes.

56. The JUUL e-cigarette is operated when a sensor in the device senses suction on the mouthpiece, at which time the battery activates the heating element which converts the solution in the pod into a vapor.

57. A light in the e-cigarette indicates the battery level.

58. Defendant designed its e-cigarettes and associated ENDS to be simplistic, easy to use, and easy to conceal.

59. Such defective design, and the nature of ENDs devices, has caused an increased risk of nicotine addiction among users.

60. Recent studies have shown that the amount of nicotine per puff of a JUUL e-cigarette is the substantially the same, or greater than, that of a conventional cigarette.[5]

---

[3] Esther E. Omaiye, MS et al., Toxicity of JUUL Fluids and Aerosols Correlates Strongly with Nicotine and Some Flavor Chemical Concentrations (Dec. 2018), available at:
https://www.biorxiv.org/content/biorxiv/early/2018/12/09/490607.full.pdf
[4] Duell, James F. Pankow, and David H. Peyton, Free-Base Nicotine Determination in Electronic Cigarette Liquids by 1H NMR Spectroscopy, 31 Chem. Res. Toxicol. 431, 431 (2018).
[5] Reilly et al., Free Radical, Carbonyl, and Nicotine Levels Produced by JUUL Electronic Cigarettes, 3.

61. Defendants also specifically implemented a marketing scheme designed to attract individuals to purchase their highly addictive products, while using false, deceptive, unconscionable, and misleading advertising regarding the health effects of their products and their relative safety to conventional cigarettes.

62. To date, the CDC and FDA have reported at least 530 cases of pulmonary illness across at least 25 states related to the use of electronic cigarettes.

63. Defendants knew or should have known that e-cigarettes were not safe for consumers and posed a greater risk of nicotine dependence than conventional cigarettes, but failed to disclose this information to the public, including Plaintiff.

64. Defendants' failure to adequately warn users of the effects of the amount of nicotine contained in its products and of adverse health effects shows Defendants' intent to attract consumers to use, and become addicted to, their products under false pretenses.

65. JUUL has not been approved by the FDA or any other entity as safer than traditional cigarettes or as a smoking therapy or smoking cessation device, despite implicitly and explicitly advertising as such for years through the "Switch" to JUUL marketing campaign in which it is advertised as an alternative to conventional cigarettes.

66. The FDA has specifically stated that any smokers attempting to quit should seek counseling or FDA approved smoking cessation methods rather than e-cigarettes.

67. On September 9, 2019, the FDA sent Defendant JUUL a "warning letter" finding that JUUL fraudulently and unlawfully marketed, sold, and distributed its products by advertising them as safer than conventional cigarettes, without the appropriate scientific evidence and FDA Order to make such a claim.

68. JUUL was well aware that its fraudulent advertising and marketing was targeted towards encouraging and attracting new users towards its products, without revealing the highly addictive and dangerous nature thereof.

69. JUUL failed to disclose the serious adverse health effects of using its products, including the risk of addiction they pose, while falsely marketing them as safer than conventional cigarettes and as smoking cessation devices.  Nonetheless, JUUL has consistently attempted to expand its marketing to entice new e-cigarette users.

70. Even after adding the warnings that its products contain nicotine, JUUL continued to promote its flavors that were most popular and promote a campaign explicitly and implicitly indicating that these products were safer than conventional cigarettes.

71. Plaintiff has developed severe adverse health conditions since switching to JUUL, including but not limited to, addiction to nicotine.

72. Moreover, the extent to which Plaintiff will continue to develop pulmonary disease, or other nicotine and e-cigarette related conditions, cannot be determined at the present time and can only be determined by a series of tests over time.

73. Since its inception, JUUL has engaged in false, misleading, and fraudulent advertising, based on the assertion that its e-cigarettes and associated ENDS were a safe and/or safer alternative to conventional cigarettes, without providing any basis, medical or otherwise, to assert such a claim.

74. JUUL engaged in deceptive and misleading marketing and advertising specifically directed to engage individuals and encourage them to purchase, use, and become addicted to e-cigarettes and ENDS, and further did so falsely and deceptively by failing to inform consumers of the heightened risk of addiction they pose.

75. The seriousness of the danger faced by Plaintiff due to the actions of Defendant cannot be overstated.

76. Through this action Plaintiff seeks, inter alia, reasonable and adequate compensation for pain and suffering, financial harm, emotional distress, medical expenses, and disfigurement, as well as in the form of continued medical monitoring over time, at Defendant's expense.

## COUNT ONE

### Negligence

77. Plaintiff incorporates all prior allegations of this complaint.

78. At all times material to the within cause of action, Defendants were engaged in doing business throughout the State of New Jersey and elsewhere, specifically having designed, manufactured, assembled, distributed, and sold certain e-cigarettes and associated ENDS, together with their component parts, in interstate commerce, in New Jersey and elsewhere.

79. It was at all times foreseeable to Defendants that failure to provide adequate warnings regarding the potential dangers, including as to addiction, of e-cigarettes and ENDS would result in harm to Plaintiff.

80. This includes, but is not limited to, the failure to provide adequate information regarding the medical effects of using e-cigarettes and ENDS, including their harms and addictive qualities, the failure to provide adequate warnings on the packaging of e-cigarettes and ENDS regarding adverse health effects, the failure to provide adequate warnings on e-cigarettes and ENDS regarding the potential for adverse health effects and/or

malfunction, and the failure to install proper safeguards to discourage the use of e-cigarettes and ENDS by new e-cigarette users.

81. It was also at all times foreseeable that the inadequate, improper, and unlawful design of Defendants' e-cigarettes and associated ENDS would attract, enable, and encourage individuals, including Plaintiff, to use such products more frequently than traditional cigarettes and also to become addicted to them.

82. Despite this, Defendants failed to provide such reasonable safeguards and take other reasonable actions that a prudent person under similar circumstances would have taken to eliminate or minimize the risk of danger to Plaintiff.

83. The injuries suffered by Plaintiff were directly and proximately caused by the negligence of Defendants as a result of the actions or inaction Defendants took in manufacturing, designing, assembling, installing, marketing, selling, delivering, or otherwise handling the subject e-cigarettes and ENDS and component products.

84. The conduct of Defendants was both a proximate cause and a cause in fact of the exposure and damages inflicted on Plaintiff and the expenses made necessary by such exposure.

85. As a result of Defendants' conduct, the Plaintiff has suffered and continues to suffer damages.

86. WHEREFORE, Plaintiff demand judgment against Defendants, jointly, severally or in the alternative in the amount of damages and together with interest, costs of suit, and such other relief as is just and proper.

## COUNT TWO

### Violation of the New Jersey Consumer Fraud Act (N.J.S.A. § 56:8-1, et seq.)

87. Plaintiff incorporates by reference all prior allegations of this complaint.

88. The New Jersey Consumer Fraud Act (hereinafter, "CFA") at N.J.S.A. § 56:8-2 prohibits businesses from engaging in any misrepresentations, fraud, false pretense, deception, or unconscionable commercial conduct in connection with consumer sales.

89. N.J.S.A. § 56:8-2 also prohibits businesses engaging in any suppression or omission of any material fact with the intent that others will rely on such suppression or omission, in connection with consumer sales.

90. Defendants violated the CFA by misrepresenting the e-cigarettes and ENDS, including e-liquids, pods, and component parts, to be a safe for use.

91. Defendants also violated the CFA by suppressing and/or omitting material facts regarding the addictiveness and safety of e-cigarettes and ENDS.

92. Defendants also violated the CFA by engaging in unconscionable conduct with respect to misrepresenting their products as a safe and/or safer alternative to traditional cigarettes to attract traditional cigarette smokers.

93. Each false pretense, misrepresentation, unconscionable act, and/or knowing omission of material fact by Defendants constitute a separate violation of the CFA.

94. As a direct and proximate cause of Defendants' violation of the CFA, Plaintiff has suffered, and will in the future continue to suffer, injuries and damages.

95. Under N.J.S.A. § 56:8-19, Plaintiff is entitled to treble damages for each violation committed by Defendants under the CFA.

96. WHEREFORE, Plaintiff demands judgment against Defendants, jointly, severally or in the alternative in the amount of damages and together with interest, costs of suit, and such other relief as is just and proper.

**COUNT THREE**

**<u>Fraud</u>**

97. Plaintiff incorporates by reference all prior allegations of this complaint.

98. Defendants fraudulently and deceptively marketed, advertised, distributed, and sold e-cigarettes and associated ENDS as non-addictive or less addictive products than conventional cigarettes.

99. Defendants failed to disclose the highly addictive nature of their products and the adverse health effects likely to arise therefrom.

100.    Defendants made these fraudulent representations to Plaintiff through advertising and marketing campaigns.

101.    Each misrepresentation and omission was material as it contributed to the evaluation by Plaintiff as to whether to purchase and use Defendants' products.

102.    Defendants knew that its misrepresentations and omissions were false and intended Plaintiff rely upon these misrepresentations and omissions to purchase their products.

103.    Plaintiff reasonably relied upon Defendants' misrepresentations and omissions to his severe detriment.

104.    WHEREFORE, Plaintiff demands judgment against Defendants, jointly, severally or in the alternative in the amount of damages and together with interest, costs of suit, and such other relief as is just and proper.

## COUNT FOUR

### False Advertising

105.     Plaintiff incorporates by reference all prior allegations of this complaint.

106.     The Regulations Governing General Advertising, N.J.A.C. § 13:45A-9.1 et seq.

(hereinafter, "Advertising Regulations") address general advertising practices.

107.     The Advertising Regulations provide, in relevant part, under N.J.A.C. § 13:45A-

9.2, the following:

(a)  Without limiting the application of N.J.S.A. § 56:8-1et seq.

[the CFA], the following practices shall be unlawful with respect

to all advertisements:

5.  The use of any type, size, location, lighting, illustration, graphic

depiction, or color resulting in the obscuring of any material fact.

Disclaimers permitted or required under this section, such as

"terms and conditions apply" and "quantities limited," shall be set

forth in a type size and style that is clear and conspicuous relative

to the other type sizes and styles used in the advertisement.

10.  The failure of an advertiser to substantiate through documents,

records or other written proof any claim made regarding the safety,

performance, availability, efficiency, quality or price of the

advertised merchandise, nature of the offering or quantity of

advertised merchandise available for sale. Such records shall be

made available upon request for inspection by the Division or its

designee at the advertiser's regular place of business or central

office in New Jersey, or, at the advertiser's option, the Division's

designated offices, for a period of 90 days following the effective

date of the advertisement.

[N.J.A.C. § 13:45A-9.2].

108.   In its advertisements, Defendants used illustrations, graphic depictions, colors,

models, influencers, and type that resulted in obscuring material facts regarding the

addictiveness and misrepresenting the safety of e-cigarettes and ENDS.

109.   Defendants' disclaimers on their advertisements were woefully insufficient

relative to other aspects of the advertisements.

110.   Defendants have failed to substantiate through any credible documents, records,

or any other written proof its claims regarding the safety of its products, including but not

limited to the assertion that e-cigarettes and ENDS assist conventional cigarette smokers

to quit smoking and/or that e-cigarettes and ENDS are a safe and/or safer alternative to

conventional cigarettes.

111.   The above referenced violations constitute multiple violations of the Advertising

Regulations.

112.   Each violation of the Advertising Regulations by Defendant constitutes a per se

violation of the CFA.

113.   As a direct and proximate cause of Defendants' violation of the Advertising

Regulations, Plaintiff has suffered, and will in the future continue to suffer, severe

injuries and damages.

114.     WHEREFORE, Plaintiff demands judgment against Defendants, jointly, severally or in the alternative in the amount of damages and together with interest, costs of suit, and such other relief as is just and proper.

## COUNT FIVE

### Strict Liability- Failure to Warn

115.     Plaintiff incorporates by reference all prior allegations of this complaint.

116.     At all times material to the within cause of action, Defendants were engaged in doing business throughout the State of New Jersey and elsewhere, specifically having designed, manufactured, assembled, distributed, and sold certain e-cigarettes and ENDS and associated products, together with their component parts, in interstate commerce, in New Jersey and elsewhere.

117.     As discussed above, it was foreseeable to Defendants that individuals, including Plaintiff, would use and misuse Defendants' products to their detriment.

118.     Plaintiff received JUUL products in the same conditions in which they were manufactured, designed, distributed, and sold and used their products in a manner reasonably intended by Defendants.

119.     The risks of using Defendants products were known to Defendants at the time of manufacture, design, distribution, and sale.

120.     The risks of using Defendants products were unknowable and unexpected to the average consumer, including Plaintiff.

121.     The injuries to Plaintiff were directly and proximately caused by the actions or inactions of Defendants and Defendants are liable to said Plaintiff in this cause of action based upon the theory of strict liability in the following particulars:

a.  In failing to warn users, including Plaintiff, of the defects, dangers, risks, and/or hazards which existed in the subject e-cigarettes and ENDS;

b.  In failing to design, manufacture, assemble, promote, sell, supply, or otherwise take action with respect to said e-cigarettes and ENDS in accordance with safety codes, regulations, and statutes applicable to same;

c.  In failing to correct the defective and dangerous conditions existing in the subject e-cigarettes and ENDS.

122.    As a direct and proximate result of the actions or inactions of Defendants, Plaintiff has suffered, and will continue in the future to suffer, severe injuries and damages.

123.    WHEREFORE, Plaintiff demands judgment against Defendants, jointly, severally or in the alternative in the amount of damages and together with interest, costs of suit, and such other relief as is just and proper.

## COUNT SIX

### **Strict Liability- Defective Design**

124.    Plaintiff incorporates by reference all prior allegations of this complaint.

125.    At all times material to the within cause of action, Defendants were engaged in doing business throughout the State of New Jersey and elsewhere, specifically having designed, manufactured, assembled, distributed, and sold certain e-cigarettes and ENDS and associated products, together with their component parts, in interstate commerce, in New Jersey and elsewhere.

126.    As discussed above, it was foreseeable to Defendants that individuals, including Plaintiff, would use and misuse Defendants' products to their detriment.

127.     The injuries to Plaintiff were directly and proximately caused by the actions or inactions of Defendants and Defendants are liable to said Plaintiff in this cause of action based upon the theory of strict liability in the following particulars:

a.   In designing, manufacturing, assembling, installing, supplying, or otherwise taking action with respect to the aforesaid e-cigarettes and ENDS in a deficient and defective condition;

b.   In failing to equip said e-cigarettes and ENDS with proper safeguards;

c.   In failing to design, manufacture, assemble, promote, sell, supply, or otherwise take action with respect to said e-cigarettes and ENDS in accordance with safety codes, regulations, and statutes applicable to same;

d.   In failing to correct the defective and dangerous conditions existing in the subject e-cigarettes and ENDS.

128.     As a direct and proximate result of the actions or inactions of Defendants, Plaintiff has suffered, and will continue in the future to suffer, severe injuries and damages.

129.     WHEREFORE, Plaintiff demands judgment against Defendants, jointly, severally or in the alternative in the amount of damages and together with interest, costs of suit, and such other relief as is just and proper.

**COUNT SEVEN**

**Violation of New Jersey Products Liability Act (N.J.S.A. § 2A:58C-1 et seq.)**

130.     Plaintiff incorporates by reference all prior allegations of this complaint.

131.     Defendants are liable to Plaintiff in this action for their failure to comply with, and/or for its violations of the New Jersey Products Liability Act (hereinafter, "PLA"), N.J.S.A. § 2A:58C-1 et seq.

132.     Under N.J.S.A. § 2A:58C-2, a manufacturer or seller of a product is liable if it failed to adequately warn or provide instructions or the product was designed in a defective manner.

133.     Defendants failed to adequately warn Plaintiff of the potential health hazards associated with the purchase and use of e-cigarettes and ENDS.

134.     Defendants e-cigarettes and ENDS are defectively designed to encourage, attract, and enable new e-cigarette users to use their e-cigarettes and ENDS to their detriment.

135.     As a direct and proximate result of the actions and/or inactions of Defendants, Plaintiff has suffered, and will continue in the future to suffer, severe injuries and damages.

136.     WHEREFORE, Plaintiff demands judgment against Defendants, jointly, severally or in the alternative in the amount of damages and together with interest, costs of suit, and such other relief as is just and proper.

## COUNT EIGHT

### Unjust Enrichment

137.     Plaintiff incorporates by reference all prior allegations of this complaint.

138.     Defendants have been unjustly enriched through their sale of JUUL products based on material misrepresentations and omissions, false advertising, unconscionable business practices, and fraud.

139.     Defendants have been unjustly enriched at the expense of, and to the detriment of, Plaintiff.

140.     Defendants knowingly received and retained wrongful benefits and funds from Plaintiff.

141.     It would be inequitable to allow Defendants to retain these benefits and funds.

142.     Plaintiff is therefore entitled to recover from Defendants, as restitution, all money paid for JUUL products, any benefit received by Defendants as a result of such activity, and interest thereon from the time of payment.

143.     WHEREFORE, Plaintiff demands judgment against Defendants, jointly, severally or in the alternative in the amount of damages and together with interest, costs of suit, and such other relief as is just and proper.

## COUNT NINE

### Breach of Implied Warranty of Merchantability

144.     Plaintiff incorporates by reference all prior allegations of this complaint.

145.     The Uniform Commercial Code, N.J.S.A. § 12A:2A-212, provides that, unless excluded or modified, a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind.

146.     With respect to JUUL products, Defendants warranted that its e-cigarettes and associated ENDS would be merchantable, fit for the ordinary purposes for which they are used, and conform to promises and affirmations of fact made on the container and label.

147.     At the time of delivery, Defendants breached the implied warranty of merchantability as their products were defective as alleged above, posed severe safety

risks at the time they were sold, and failed to conform to the standard performance of like products in trade.

148.     Defendants are merchants with respect to the subject products sold to Plaintiff.

149.     Defendants products are not fit for the intended purpose of offering a safe and/or safer alternative to cigarettes because such products when used as intended cause, worsen, or aggravate nicotine addiction and cause severe adverse health effects.

150.     As a direct and proximate result of Defendants breach of the implied warranty of merchantability, Plaintiff has suffered damages.

151.     WHEREFORE, Plaintiff demands judgment against Defendants, jointly, severally or in the alternative in the amount of damages and together with interest, costs of suit, and such other relief as is just and proper.

## COUNT TEN

### Breach of Express Warranty

152.     Plaintiff incorporates by reference all prior allegations of this complaint.

153.     N.J.S.A. § 12A:2-313 provides that express warranties by the seller are created by any affirmation of fact or promise made by the seller to the buyer which related to the goods and becomes a basis of the bargain.

154.     The express warranty creates an obligation that the goods shall conform to the affirmation or promise.

155.     Defendants issued express warranties in connection with their e-cigarettes and associated ENDS that such products were less addictive and less harmful than conventional cigarettes, and that they were smoking cessation devices, through their marketing and advertisements.

156.     The affirmations of fact and promises set forth in Defendants marketing and advertising became part of the basis of the bargain between Plaintiff.

157.     These affirmations of fact and promises created express warranties that JUUL products would conform to Defendants affirmations of fact and promises.

158.     Defendants breached their express warranties as JUUL products deliver a more potent source of nicotine than conventional cigarettes and cause severe adverse health consequences.

159.     As a direct and proximate result of Defendants breach of express warranties, Plaintiff suffered damages as he would not have purchased and/or used Defendants' products had he known the true facts about the products.

160.     WHEREFORE, Plaintiff demands judgment against Defendants, jointly, severally or in the alternative in the amount of damages and together with interest, costs of suit, and such other relief as is just and proper.

## COUNT ELEVEN

### Public Nuisance

161.     Plaintiff incorporates by reference all prior allegations of this complaint.

162.     Defendants have engaged in systematic deceptive and unconscionable advertising and marketing of JUUL products.

163.     This misconduct caused and/or substantially contributed towards a public nuisance.

164.     Defendants' misconduct has created or substantially contributed to an unreasonable interference with rights common to the general public, including the right to be free from unreasonable interference with public health, safety, and peace.

165.     Defendants' interference with the public health, safety, and peace has been
unreasonable.

166.     Defendants' inappropriate and unlawful conduct is responsible for new e-cigarette
users, including minors, becoming addicted to nicotine and significantly interfered with
the public health, safety, and peace.

167.     Defendants' misconduct has produced permanent or long-lasting effects and will
continue until and unless Defendants reveal the compete truth about their products,
including severe safety and health risks and addictiveness, and take meaningful corrective
action.

168.     Defendants knew, or should have known, that their unreasonable and unlawful
conduct was likely to have a significant adverse impact on public health, safety, and
peace.

169.     Defendants' conduct is and was unlawful.

170.     The negative impact Defendants have had on public health, safety, and peace
cannot be overstated, as they have created an epidemic of nicotine dependent individuals
through their unlawful conduct.

171.     The negative health consequences of Defendants products will ultimately be
borne by the community as a whole.

172.     Defendants' products deliver dangerous toxins and carcinogens to their users.

173.     The costs associated with Defendants' products include, but are not limited to,
costs for medical care, increased insurance costs, an increased strain on the medical
system which effects the quality and cost of care available to the public, reduced
productivity of JUUL consumers, the cost to society of supporting nicotine ingestion

cessation programs, increased life insurance rates, increased social services, increased addiction related crime, and increased disability benefits.

174.     Defendants had significant control over the public nuisance they created, including the design, advertising, marketing, promotion, and manufacture of JUUL products.

175.     Defendants could have prevented, or at least significantly reduced, the public nuisance by ceasing improper and unlawful marketing and advertising of its products.

176.     Defendants are not immune from a public nuisance claim.

177.     The damages and costs to society from Defendants unlawful conduct is significant and was foreseeable to Defendants.

178.     Plaintiff has suffered, and continues to suffer, harm different from that suffered by individual residents of New Jersey.

179.     Plaintiff sues in his public capacity for all appropriate relief to restore the public health, safety, and peace and recover appropriate damages, expenses, costs, and fees.

180.     Defendants are also liable for punitive damages to reflect the aggravating circumstances of their intentional, willful, wanton, malicious, and oppressive conduct. Defendants acted or failed to act knowingly, willfully, deceptively, with gross negligence, maliciously, and/or wantonly with conscious disregard for the public health, safety, and welfare.

181.     WHEREFORE, Plaintiff demands judgment against Defendants, jointly, severally or in the alternative in the amount of damages and together with interest, costs of suit, and such other relief as is just and proper.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff asks this Court to:

a. Award actual, compensatory, and consequential damages;

b. Award all expenses, including incidental past and future expenses, including medical expenses, loss if earnings, and loss of earning capacity;

c. Award restitution;

d. Award punitive damages;

e. Award reasonable attorneys' fees and costs of this case;

f. Award prejudgment and post-judgment interest;

g. award all statutory damages, including double and treble damages as authorized by statute;

h. enter appropriate injunctive relief against Defendants and their officers, agents, successors, employees, representatives, and/or assigned; and

i. Such other and further legal, equitable, and declaratory relief as justice requires.

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury on all issues so triable.

**JAVERBAUM WURGAFT HICKS**
**KAHN WIKSTROM & SININS, P.C.**

Dated:  9/30/19           By: _____
                              Michael A. Galpern
                              Zachary M. Green

**KLAFTER OLSEN & LESSER**

By: /s/ Seth R. Lesser _____
Seth R. Lesser
Morgan M. Stacey
Two International Drive, Suite 350
Rye Brook, N.Y.  10573
(914) 934-9200

Attorneys for Plaintiff